PRESENT:  All the Justices

JOSE ISAIS GARCIA VASQUEZ

v.  Record No. 230514

OPINION BY
JUSTICE D. ARTHUR KELSEY
APRIL 18, 2024

CHADWICK DOTSON, DIRECTOR OF
THE VIRGINIA DEPARTMENT OF
CORRECTIONS, ET AL.

Upon Petition for Writ of Habeas Corpus

Jose Isais Garcia Vasquez seeks a writ of habeas corpus, asserting that he has a right under Code § 53.1-202.3 to an early release from prison.  One of his two convictions involved conspiracy to commit first-degree murder.  The Director of the Virginia Department of Corrections and the Warden of the Haynesville Correctional Center (collectively, the "Commonwealth") contend that the General Assembly did not intend such a "serious and dangerous" offense to be eligible under the early-release statutes.  *See* Resp't Mot. to Dismiss Pet. at 1 [hereinafter Mot. to Dismiss].  In response, Vasquez argues that the literal text of Code § 53.1-202.3, when contextually construed using neutral principles of statutory interpretation, demonstrates that the early-release statute applies to his conspiracy conviction.  We agree and will issue the writ.

I.

Initially indicted by a grand jury for first-degree murder in violation of Code § 18.2-32, Vasquez pleaded guilty in 2019 to an amended charge of conspiracy to commit a felony in violation of Code § 18.2-22 — with the predicate felony being first-degree murder.  Vasquez also pleaded guilty to violating Code § 18.2-46.2(A), a statute prohibiting a member or active participant in a "criminal street gang" from committing a "criminal act . . . for the benefit of, at the direction of, or in association with any criminal street gang."

The trial court sentenced Vasquez on each conviction to 10 years imprisonment with 5 years suspended for a total of 10 years of active incarceration. Vasquez entered the penitentiary in July 2020. At that time, he was eligible under then-existing Code §§ 53.1-202.2 and 53.1-202.3 to receive earned-sentence credits at a maximum rate of 4.5 days of credit for every 30 days served. Under the then-existing statutory framework, all convicted felons would serve at least 85% of their sentences. *See* Comm'n on Sent'g & Parole Reform, *Sentencing and Parole Reform*, House Doc. No. 18, at 19 (1995); Va. State Crime Comm'n, *2020 Annual Report*, at 16, 21 (June 30, 2021).

In 2020, the General Assembly amended the earned-sentence credit program with an effective date of July 1, 2022. *See Prease v. Clarke*, 302 Va. 376, 379-80 (2023). Under the new early-release program, prisoners with qualifying convictions are eligible to receive credits at a higher rate of up to 15 days of credit for every 30 days served. *See* Code § 53.1-202.3(B). According to the Virginia Criminal Sentencing Commission, the new crediting system could potentially lower the actual incarceration of some but not all convicted felons to 67% of the court-ordered sentences. *See* Va. Crim. Sent'g Comm'n, *Re-analysis of Virginia's Sentencing Guidelines and Midpoint Enhancements for Violent Offenders (Chapter 783, 2022)*, House Doc. No. 13, at 1 n.3, 5, 49 n.22 (2022).

Subsection A of the amended statute enumerates various disqualifying convictions that do not receive the new, more favorable, sentencing credits. One of them is "any violation of § 18.2-32." *See* Code § 53.1-202.3(A)(2). Code § 18.2-32 distinguishes between first- and second-degree murder, deeming first-degree murder a Class 2 felony for sentencing purposes and fixing punishment for second-degree murder at 5 to 40 years in the penitentiary. Subsection A of amended Code § 53.1-202.3, however, does not include a violation of Code § 18.2-22 as a

2

disqualifying conviction. In relevant part, Code § 18.2-22(a) applies to those who "shall conspire, confederate or combine with another . . . to commit a felony."

Because he was not convicted of either first- or second-degree murder, Vasquez argues that he did not violate Code § 18.2-32 and thus was not disqualified from early release under the enhanced earned-sentence credit statute. While acknowledging that conspiracy to commit a felony in violation of Code § 18.2-22 is not literally "enumerated in subsection A," *see* Code § 53.1-202.3(B), the Commonwealth argues that conspiracy to commit a murder is subsumed within the phrase "any violation of § 18.2-32," *see* Code § 53.1-202.3(A)(2), and thus is a disqualifying conviction. *See generally* 2022 Op. Atty. Gen. 22-008, 2022 Va. AG LEXIS 11 (April 13, 2022). The dispute is not merely academic in this case. If Vasquez is correct, he is entitled to immediate release.[1] If the Commonwealth is correct, Vasquez's earliest release date would be in February 2025.

## II.

Under Virginia law, "[c]riminal punishment serves a number of purposes, including incapacitation, deterrence, and retribution." *Walker v. Commonwealth*, 302 Va. 304, 324 (2023); *see also Woodard v. Commonwealth*, 287 Va. 276, 281 (2014); *Wilborn v. Saunders*, 170 Va. 153, 160 (1938). With these purposes in mind, Virginia's sentencing guidelines seek "to ensure the imposition of appropriate and just criminal penalties . . . especially for the effective incapacitation of violent criminal offenders." Code § 17.1-801.[2] In support of these goals, the

---

[1] Vasquez has remained classified at Level 1 at all times during his incarceration, which would earn him the maximum of 15 credits for every 30 days served under Code § 53.1-202.3 (B)(1). The Commonwealth does not dispute that if Vasquez's earned-sentence credits were calculated under his interpretation of Code § 53.1-202.3, he would be eligible for immediate release. Mot. to Dismiss at 8 n.1.

[2] "An important function of the corrections system," the United States Supreme Court has observed, "is the deterrence of crime." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

General Assembly has provided various "tools for rehabilitation of criminals," *Peyton v. Commonwealth*, 268 Va. 503, 508 (2004), premised on the belief that rehabilitation that is truly effective reduces recidivism.

Legislating within this penological context, the General Assembly in 2020 increased the availability of earned-sentence credits "as an incentive for good behavior and rehabilitative activity while incarcerated." *Prease*, 302 Va. at 379. Accepting this as the declared purpose of the legislation, the parties ask us to choose between their disparate views on whether the legislature intended enhanced credits to apply to criminals convicted of conspiring to commit murder. In addressing this question, however, we ask "not what the legislature intended to enact, but what is the meaning of that which it did enact. We must determine the legislative intent by what the statute says and not by what we think it should have said." *Carter v. Nelms*, 204 Va. 338, 346 (1963). We thus do not inquire as to "what the legislature meant; we ask only what the statute means." *Tvardek v. Powhatan Vill. Homeowners Ass'n*, 291 Va. 269, 277 n.7 (2016) (quoting Oliver Wendell Holmes, *The Theory of Legal Interpretation*, 12 Harv. L. Rev. 417, 419 (1899)).

As we said nearly a century ago, "[i]t is our duty to interpret the statute as written and when this is done our responsibility ceases." *City of Lynchburg v. Suttenfield*, 177 Va. 212, 221 (1941). We see things no differently today. "[T]he interpretative principle that precedes all

> The premise is that by confining criminal offenders in a facility
> where they are isolated from the rest of society, a condition that
> most people presumably find undesirable, they and others will be
> deterred from committing additional criminal offenses. This
> isolation, of course, also serves a protective function by
> quarantining criminal offenders for a given period of time while, it
> is hoped, the rehabilitative processes of the corrections system
> work to correct the offender's demonstrated criminal proclivity.

*Id.* at 822-23.

others is that 'courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Appalachian Power Co. v. State Corp. Comm'n*, 301 Va. 257, 279 (2022) (citation omitted). Given our commitment to "neutral principles of interpretation," we are not "free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal." *Id.* (citation omitted).

This perspective leads us to a simple exposition of the disputed text in Code § 53.1-202.3(A)(2) — "any violation of § 18.2-32" — as a conviction disqualified from receiving the enhanced sentencing credits. "Any" is an adjective modifying "violation," which is further modified by the prepositional phrase "of § 18.2-32." The question is whether "any violation of § 18.2-32" includes the inchoate offense of conspiracy to commit murder. The answer must be no. An accused criminal indicted for murder under Code § 18.2-32 cannot be convicted on that indictment for conspiracy to commit murder under Code § 18.2-22. Nor can an accused criminal indicted for conspiracy be convicted of murder. They are separate crimes with separate elements. Neither is a lesser-included offense of the other. The jury instructions are different, the trial court's review of the sufficiency of the evidence is different, and the statutory punishments are different.

Challenging this interpretation as literalistic, the Commonwealth relies on the maxim that "a statute should never be construed in a way that leads to absurd results." Mot. to Dismiss at 10 (quoting *Ricks v. Commonwealth*, 290 Va. 470, 477 (2015)). The alleged absurdity appears to be twofold: (i) the anomaly of denying early release to those that solicit others to commit murder (a crime expressly deemed disqualifying by Code § 53.1-202.3(A)(2)) but granting it to those who conspire with others to commit murder[3] and (ii) the related oddity of granting early release to

_____

[3] "To read the term 'any violation of' in this subdivision as referring to only the completed crime," the Attorney General has opined, "would lead to the irrational conclusion that

5

conspirators who agree to commit a premeditated murder and yet denying it to murderers that act with malicious, but not premeditated, intent. The "any violation" language remedies these aberrations, the Commonwealth argues, by treating conspiracy to commit murder as a "type" of murder prohibited by Code § 18.2-32. Mot. to Dismiss at 11, 16.

This argument asks too much of Code § 18.2-32. Neither this statute, nor any other, defines murder or lays out the essential elements of the crime. *See generally Wooden v. Commonwealth*, 222 Va. 758, 761 (1981) (observing that "murder is not elsewhere defined in the Code"). Murder is a term of art with an "ancient common law" definition. *Heacock v. Commonwealth*, 228 Va. 397, 403 (1984).[4] Professor Costello concisely summarized it as "the unlawful killing of one human being by another with malice aforethought." John L. Costello, Virginia Criminal Law and Procedure § 3.2[1], at 41 (4th ed. 2008).

The term "murder" has been incorporated into scores of Virginia statutes. Code § 18.2-32 is one of them. It first mentions, but then excludes from its reach, "aggravated murder" that is governed by Code § 18.2-31. Code § 18.2-32 thereafter categorizes three types of first-degree murder based upon the circumstances of the killing. These include murders (i) "by poison, lying in wait, imprisonment, [or] starving"; (ii) "by any willful, deliberate, and premeditated killing"; or (iii) "in the commission of, or attempt to commit, arson, rape, forcible sodomy, inanimate or animate object sexual penetration, robbery, burglary or abduction, except as provided in § 18.2-

_____

the General Assembly intended to make solicitation to commit murder ineligible for enhanced sentence credits — yet leave convictions for conspiracies or actual attempts to commit murder eligible for enhanced sentence credits." 2022 Op. Atty. Gen. 22-008, 2022 Va. AG LEXIS 11, at *4-5 (emphasis omitted).

[4] *See generally M'Whirt's Case*, 44 Va. (3 Gratt.) 594, 604 (1846); *Whiteford v. Commonwealth*, 27 Va. (6 Rand.) 721, 723 (1828); 4 William Blackstone, Commentaries *195; 2 Edward Coke, The First Part of the Institutes of the Laws of England: or, a Commentary upon Littleton § 500, at 287b (1st Am. ed. 1853); James M. Matthews, Digest of the Laws of Virginia of a Criminal Nature 154-55 n.1 (2d ed. 1878); George Webb, The Office and Authority of a Justice of the Peace 231 (1736).

31." Code § 18.2-32. All types of murder other than those described in Code §§ 18.2-31 and 18.2-32 are deemed "murder of the second degree." Code § 18.2-32. Though they are fairly described as discrete types of murder, that does not change the settled view that these "statutory gradations" did not create "new offenses." *Flanders v. Commonwealth*, 298 Va. 345, 354 (2020). "Instead, they established punishments for the common law crime of murder that correspond to the degree of culpability with which it is committed." *Id.*; *see also Wicks v. Commonwealth*, 4 Va. (2 Va. Cas.) 387, 392 (1824).

No statute treats conspiracy to commit murder as a *type* of murder. Nor is there any common-law tradition of doing so. It would be difficult, to be sure, to conceive how it could be. The definition of murder (and, it follows, all types of murder) requires the "fact of a death." Costello, *supra*, § 3.2[3], at 42. That fact "may be established directly or circumstantially, but it must be established." *Id.* One cannot murder a victim by merely thinking about murdering him, plotting to murder him, or entering into a conspiratorial agreement with others to murder him. A conspiracy to commit a murder requires only an agreement to commit a future murder that may or may not ever occur. But if a conspirator later follows through on the agreement and maliciously kills the targeted victim, the conspirator has committed two crimes: murder and conspiracy to commit murder. *See id.* § 17.4, at 272-73. He can be indicted for and convicted of both crimes. *See Boyd v. Commonwealth*, 236 Va. 346, 351 (1988) (distinguishing simultaneous charges from subsequent charges barred by Code § 18.2-23.1).

This reasoning syncs well with the traditional view that the "distinctiveness between a substantive offense and a conspiracy to commit is a postulate of our law." *Callanan v. United States*, 364 U.S. 587, 593 (1961). In many contexts and over many years, courts have recognized that "the commission of the substantive offense and a conspiracy to commit it are separate and

7

distinct offenses." *Id.* (quoting *Pinkerton v. United States*, 328 U.S. 640, 643 (1956)). We see

no reason in this case to blur this distinction by judicially defining the separate and distinct

offense of conspiracy to commit murder as a type of the substantive offense of murder.

In this case, the grand jury indicted Vasquez for murder in violation of Code § 18.2-32.

The trial court, however, accepted a motion to amend the indictment to allege only conspiracy to

commit murder in violation of Code § 18.2-22. Vasquez pleaded guilty to the amended-

conspiracy indictment and was never convicted of murder in violation of Code § 18.2-32.

Because the General Assembly chose not to disqualify conspiracy to commit murder from Code

§ 53.1-202.3's calculation of enhanced earned-sentence credits, Vasquez is entitled to these

credits and thus to early release from prison.

As in *Prease*, we offer no commentary on the policy judgments baked into this statute as

a whole or the disputed provision in particular. It is not our place to do so. We unanimously

held in *Prease* that the statutory text provided enhanced earned-sentence credits to criminals

convicted of attempted aggravated murder yet denied such credits to criminals found guilty of

solicitation of murder. Because our textual and contextual analysis required that result, we said

that competing "policy implications . . . do not factor into our interpretation" of the statute.

*Prease*, 302 Va. at 385. We explained in *Prease* the importance of this jurisprudential limitation.

It bears repeating here:

> The legislature is "the author of public policy." For us, then, "the
> 'best indications of public policy are to be found in the enactments
> of the Legislature.'" "We can only administer the law as it is
> written." We may not extend the meaning of a statute "simply
> because it may seem to us that a similar policy applies, or upon the
> speculation that if the legislature had thought of it, very likely
> broader words would have been used."

*Id.* at 385-86 (citations omitted) (quoting *In re: Woodley*, 290 Va. 482, 490 (2015)).

8

III.

In sum, we grant Vasquez's petition and issue a writ of habeas corpus directed to the Director of the Virginia Department of Corrections and to the Warden of the Haynesville Correctional Center ordering that Vasquez be released from custody.

*Writ Awarded.*